## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09-455 |
| | § | |
| ROBERT FLOWERS | § | |

## MEMORANDUM AND ORDER

This criminal prosecution is before the Court on Defendant Robert Flowers's

Motion to Suppress [Doc. # 26] ("Motion"), seeking to suppress all evidence seized

from Defendant's home on November 18, 2009.  Defendant seeks also to suppress

statements he made to law enforcement officials.  The Government filed a Response

[Doc. # 27] in opposition to the Motion.  The Court held a hearing on January 11,

2010, after which the Government filed a supplemental Response [Doc. 32] and

Defendant filed a Brief in Support of Motion to Suppress [Doc. # 33].  Having

carefully considered the parties' written submissions and oral argument, the evidence

introduced at the hearing, and pertinent legal authority, the Court **denies** the Motion.

## I.   FACTS

On November 18, 2009, deputies from the Harris County Sheriff's Office went

to Defendant's house to execute arrest warrants.  Deputy William Tipps remained in

the front of the house, and Detective Donald Bock went to the back of the house.

Detective Bock observed a motorcycle in the back yard, which he determined through

a license plate check was stolen.

After Deputy Tipps rang the doorbell, he observed Defendant trying to climb

out a second floor window.  When Defendant saw the law enforcement officers, he

went back in the house and tried to leave through the back door.  He saw Detective

Bock at the back door, so he went back through the house and exited through the front

door.  At that point, he was arrested and handcuffed while Deputies Matthew Moore

and Brain Brawner conducted a protective sweep of the house.  During the protective

sweep, the deputies located Lakisha Williams (Defendant's girlfriend) and her child.

Deputy Moore also observed what appeared to be marijuana in the bathroom, but he

did not seize the substance.  Indeed, nothing was seized during the protective sweep.

Defendant, still handcuffed, was placed in a patrol car.  Deputy Brawner gave

a printed form to Defendant to permit Defendant to consent to a search of his home

and garage.  Deputy Brawner "pretty much" read the form to Defendant and explained

to him the areas to be searched.  After reading the form to Defendant, Deputy Brawner

asked Defendant if he understood.  Defendant did not ask any questions, so Deputy

Brawner asked Defendant to sign the form.  The deputy removed the handcuffs from

one of Defendant's hands.  Defendant filled out the form, using a false name, but

signed using his true name.  By signing the form, Defendant acknowledged that he understood his "Constitutional rights concerning [his] right to refuse" and authorized the Harris County deputies to search "all areas of the residence and garage area" at Defendant's address.  *See* Voluntary Consent for Search and Seizure, Government's Exh. 1.  Defendant was cooperative throughout the process.

After Defendant signed the consent-to-search form, deputies searched the house.  During the search, deputies found in a coat closet a black bag containing gift cards, blank credit cards, and machines for imprinting credit cards.  Deputies also found some identification documents in the name Robert Flowers and others in the name Christopher Dobias, the name used by Defendant when he filled out the top portion of the consent-to-search form.  A "skimming device" was found in Defendant's bedroom.  Vehicles observed in the garage during the protective sweep were later determined to be stolen.

When deputies found what appeared to be evidence of financial crimes, they contacted Sgt. Leona Peterson with the United States Secret Service.  Sgt. Peterson approached Defendant, asked him if he wanted to speak with her, and he answered that he did.  Sgt. Peterson brought Defendant into the house and they sat together at the dining room table.  Sgt. Peterson advised Defendant of his *Miranda* rights.  A form listing the rights was initialed by Defendant beside each of five rights, but was

not signed by Defendant.  *See* Government Exh. 2.  Defendant spoke freely with Sgt. Peterson, but declined to make a written statement.  Defendant informed Sgt. Peterson that he had gotten credit card numbers from various sources, including a person working at a restaurant at the airport, and from a Russian website.  Defendant advised Sgt. Peterson that he wanted his prosecution to "go federal."[1]

Defendant signed a form giving consent to search his computer.  The computer was later examined by other Secret Service employees.

## II.   ANALYSIS

Defendant challenges the protective sweep, the consent to search Defendant's residence, and the voluntariness of the statements he made to Sgt. Peterson.

### A.   Protective Sweep

When making an arrest, a police officer may conduct a protective sweep of the premises to determine whether other persons are there who could pose a threat to the safety of the officers or other persons "when there are articulable facts and inferences

---

[1]    The public record reflects that Defendant was previously charged in federal court in Alabama, Missouri and Ohio with crimes involving counterfeiting.  In 2000, the three cases were transferred to this district pursuant to Rule 20 of the Federal Rules of Criminal Procedure and were consolidated before the undersigned.  Defendant cooperated fully with federal law enforcement officers and, based on that cooperation, the United States filed a motion for downward departure and Defendant was sentenced to probation for five (5) years, to include six months home detention.  Consequently, Defendant reasonably decided to cooperate fully in this case to obtain prosecution of the charges in federal court rather than in state court.

from which a prudent officer could believe the area to be swept harbors another dangerous individual." *See  Maryland v. Buie,* 494 U.S. 325, 334 (1990); *United States v. Mata,* 517 F.3d 279, 285-86 (5th Cir. 2008); *United States v. James*, 291 F. App'x 676, 679, (5th Cir. Sept. 10, 2008).  Officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could immediately be launched."  *Buie*, 494 U.S. at 334.  The requirements for a valid protective sweep under the circumstances of this case are:  (1) the law enforcement officers were present legally and for a legitimate law enforcement purpose; (2) the officers must have a reasonable, articulable suspicion that the area subject to the protective sweep may contain a person or persons who could pose a danger to those on the scene; (3) "the protective sweep must be limited to a cursory inspection of only those spaces where a person may hide;"  and (4) the officers must conclude the sweep once they have dispelled their reasonable suspicion of danger.  *See Mata*, 517 F.3d at 286.  The law enforcement officers may conduct a protective sweep in a home even if the arrest occurs outside the home.  *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006).  "If reasonable minds could differ, we do 'not second-guess the judgment of experienced law enforcement officers concerning the risks of a particular situation."  *Id.* (quoting *United States v. Blount*, 123 F.3d 831, 383 (5th Cir. 1997)).

In this case, the law enforcement officers were executing three felony arrest warrants and, consequently, were present legally and for a legitimate law enforcement purpose.

The Court finds that the officers had a reasonable suspicion that other people inside the house could pose a danger to those on the scene. Deputy Tipps testified that he knew from his experience that members of the criminal element are often together. It took Defendant a lengthy period of time to come to the door, having first attempted to leave the house through an upstairs window and through the back door. *See United States v. Berthelot*, 326 F. App'x 795, 979 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1619 (2006) (length of time for the defendant to answer the door is an articulable fact that could be considered in determining whether protective sweep for officers' safety was proper). Significantly, because a stolen motorcycle had been observed outside the house, the officers knew they would be required to remain at the house, both inside and outside, in order to process the stolen vehicle, increasing the risk of an attack from someone inside the house, either an accomplice in Defendant's criminal activity or a loved one with a misguided desire to protect Defendant from arrest and criminal prosecution. The officers had a reasonable basis to believe that persons inside the house could pose a danger to their safety and, therefore, properly conducted a protective sweep of the house.

Defendant argues that he was not being arrested for a violent crime and, therefore, no protective sweep was allowed.  Defendant cites no legal authority for his position that protective sweeps can be conducted only if the arrest is for a violent crime, and Fifth Circuit case law does not support the argument.  *See, e.g., United States v. Smith*, 2009 WL 3816971, *1 (5th Cir. Nov. 16, 2009) (protective sweep upheld when conducted in connection with arrest for failure to pay balance due on fine for driving without a license).  Defendant also argues that there is no evidence that he personally posed a danger to the officers.  The protective sweep, however, is not intended to protect the officers only from the person who has been arrested.  Instead, the protective sweep is intended to determine whether other people are present who could pose a threat to the officers' safety.  *See Buie,* 494 U.S. at 334; *Mata,* 517 F.3d at 285-86.

The Court finds that the protective sweep the officers conducted in fact was limited to a cursory inspection of only those locations where a person could hide, and that it lasted no longer than necessary to determine that only Lakisha Williams and her daughter were present in Defendant's house.  The officers looked into each room of the house and into the garage, all places where a person could hide.  Having found Williams and her daughter present in the house, the officers reasonably concluded that it was necessary for officers' safety to conduct the protective sweep throughout the

rest of the house.  The protective sweep lasted only a few minutes, significantly less than half an hour.  It ended as soon as the officers verified that Williams and her daughter were the only other persons inside the house.  Defendant complains that Deputy Brawner wrote down the Vehicle Identification Number ("VIN") of the vehicle in the garage, but officers did not seize the vehicle or anything else during the protective sweep, and the time it took to note the VIN did not unreasonably extend the time required for the protective sweep.

Having considered the evidence presented and the elements necessary for a protective sweep, the Court finds that the protective sweep in this case was proper, was reasonable in terms of scope and duration, and did not violate Defendant's rights under the Fourth Amendment.

### B.   Consent Search of Defendant's Home

No search warrant is required if the law enforcement officers obtain voluntary consent to the search.  *See United States v. Jacobs*, 125 F. App'x 518, 523 (5th Cir. Jan. 27, 2005) (citing *United States v. Jenkins*, 46 F.3d 447, 454 (5th Cir. 1995)). To determine whether consent to search was voluntary, the Court considers six factors, none of which is dispositive:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to

refue to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id.* (quoting *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997)).

It is undisputed that Defendant was under arrest and, therefore, his custodial status was involuntary. The Court finds that Defendant understood that the officers were likely to find incriminating evidence during a search of his house. These two factors weigh against a finding that the consent to search was voluntary.

The remaining factors, however, weigh heavily in favor of a finding that Defendant's consent to search his house was given voluntarily. There is no evidence of any coercive police procedures. Defendant was extremely cooperative with the police, based perhaps on his having previously received a downward departure and a sentence of probation for his cooperation with law enforcement officers in prior criminal prosecutions. Defendant was aware that he had the right to refuse to consent. The Consent Form, which Deputy Brawner read to Defendant before Defendant signed, clearly stated Defendant's right to refuse consent. Defendant's subsequent refusal to consent to providing a written statement to Sgt. Peterson is further evidence that he understood that he could refuse a law enforcement officer's request that he waive his rights. Defendant is educated and intelligent, speaks English fluently, and has prior experience with the criminal justice system.

Based on the evidence presented at the suppression hearing and on a careful analysis of the relevant factors, the Court finds that Defendant gave consent to the officers to search his house and garage and that the consent was given voluntarily.

Defendant argues that the protective sweep was a violation of Defendant's Fourth Amendment rights and, therefore, the Government must show that Defendant's consent was not only voluntary, but was an independent act of free will considering the temporal proximity between the illegal conduct and the consent, the presence of intervening circumstances, and the flagrancy of the initial misconduct.  *See* Defendant's Brief [Doc. # 33], p. 9 (citing *United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006)).  As noted by the Fifth Circuit in *Jenson*, the purpose of the "independent free will" inquiry "is to determine whether there was a break in the causal chain between the constitutional violation and the consent."  *Id.* at 407 (internal quotations omitted).  In this case, as explained fully herein, there was no constitutional violation prior to obtaining Defendant's consent to search his house.  As a result, there is nothing to indicate that his voluntary consent for the search was not an act of Defendant's independent free will.

Defendant voluntarily consented to the search of his house and the consent was an act of independent free will.  There was no violation of Defendant's Fourth Amendment rights and the Motion to Suppress on this basis is denied.

C.      **Voluntariness of Defendant's Statements**

The Fifth Amendment protects a defendant from self-incrimination and precludes the prosecution from using statements made during a "custodial interrogation" unless certain procedural safeguards are used. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). *Miranda* warnings must be administered prior to a "custodial interrogation." *See Miranda*, 384 U.S. at 444. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "Once adequate [*Miranda*] warnings have been given, a suspect may knowingly and intelligently waive his *Miranda* rights and agree to answer questions." *U.S. v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005).

It is undisputed that Defendant made incriminating statements to Sgt. Peterson during a custodial interrogation. The Court finds that Defendant was fully advised of his *Miranda* rights, as testified to by Sgt. Peterson and evidenced by his initials next to the various rights listed on the explanation of rights form admitted as Government Exhibit 2. The Court finds that Defendant fully understood those rights and waived them voluntarily. Although Defendant did not sign the form, the Court credits Sgt. Peterson's testimony that Defendant was willing to waive his *Miranda* rights and answer questions, but he did not want to provide a written statement and, therefore,

the written statement and signature portions of the form were not completed. Defendant knowingly and voluntarily waived his *Miranda* rights.  As was discussed in the preceding section in connection with Defendant's consent to search his home, there is nothing to indicate that Defendant's voluntary waiver of his *Miranda* rights was not an act of his independent free will because there had been no prior violation of his constitutional rights.  As a result, there was no Fifth Amendment violation.

## III.   <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Court concludes that the Harris County deputies properly conducted a protective sweep of Defendant's house, that Defendant knowingly and voluntarily consented to a more thorough search of his house, and that Defendant understood his *Miranda* rights and voluntarily waived them prior to answering questions from Sgt. Peterson.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Suppress [Doc. # 26] is **DENIED**.  It is further

**ORDERED** that the parties must appear for a pretrial conference on **February 23, 2010, at 2:30 p.m.** in Courtroom 9-F, United States Courthouse.  Trial of this case will commence **Tuesday, March 2, 2010, at 9:30 a.m.**

Signed at Houston, Texas, this **5th** day of **February, 2010**.

_____

Nancy F. Atlas

United States District Judge